UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00087-RGJ

**DRASHAWN BARTLETT**                                                                              **PLAINTIFF**

**VS.**

**RANAE BARBES, et al.**                                                                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is a dispute regarding the reasonableness of Plaintiff's experts' deposition fees. Defendants claim Plaintiff's experts' proposed flat fees are excessive and ask the Court to set a reasonable hourly rate for their deposition testimony. Plaintiff claims his experts' requested rates are appropriate and that their deposition fees must be shifted to Defendants based on his indigence. Both parties have briefed the issue (DN 57; DN 59[1]), and the matter stands submitted to the Court.

### I. Background

This 42 U.S.C. § 1983 civil rights action results from an injury Plaintiff Drashawn Bartlett sustained to his left index finger during a basketball match while incarcerated at the Luther Luckett Correctional Center in February of 2017. (DN 1, at ¶¶ 11-12). Plaintiff filed this action in February of 2018, alleging that Defendants' failure to provide him with timely and adequate medical care following this injury caused him to suffer unnecessary pain and suffering. (*Id.*, at ¶ 28).

---

[1] Five days after filing his memorandum for this dispute, Plaintiff filed a Notice, indicating that he had inadvertently filed the wrong copy of his memorandum. (DN 59). Because Defendants did not object to this replacement filing and because this replacement filing doesn't seem to include substantive additions, the Court will use DN 59-1 as Plaintiff's submission in resolving the instant dispute.

In July of 2020, the Court extended several of this case's scheduling order deadlines. Of relevance here, the Court extended the deadline for expert discovery to November 15, 2020. (DN 46, at p. 5). Plaintiff had already completed his expert disclosures on June 17, 2020, identifying Dr. Susan E. Lawrence and Dr. Merrick J. Wetzler. (DN 44). Plaintiff used a company, Prime Medical Experts, to select and retain these two experts. (*See* DN 57-1; DN 57-2).

Defendants Ranae Barbes, et al. ("Defendants") promptly served supplemental discovery requests relating to Plaintiff's experts, seeking information as to the experts' compensation rates for deposition testimony. On September 8, 2020, Plaintiff produced compensation agreements that detailed the following rates for each expert's deposition testimony:

- $4,000 up front for ½ day deposition (4 hours or a fraction thereof);
- $1,200 for preparation time (2 hours minimum);
- If the deposition exceeds 4 hours, then a full day would be charged for the deposition ($8,000).

(*Id.*). Finding these proposed expert deposition rates to be high, Defendants attempted to confer with Plaintiff to negotiate lower, more reasonable rates.

The parties sought the Court's assistance with this dispute. After hearing their arguments during a telephonic conference, the Court found that Plaintiff's experts' requested flat fees were unreasonable. (DN 52). The Court noted that flat fees for depositions are generally discouraged in this District and that Plaintiff failed to demonstrate why a departure from this policy was warranted. (*Id.* (citing *Gough v. Louisville Jefferson Cnty. Metro Gov.*, No. 3:12-CV-849-DJH-CHL, 2016 WL 11654862, at *2 (W.D. Ky. Sept. 13, 2016)). Because Plaintiff's experts had not identified a reasonable hourly rate for their services, the Court directed the parties to "confer and work to negotiate a reasonable hourly rate with Plaintiff's experts that should not exceed $400/hour. (*Id.*). The Court cautioned that if there was "an unwillingness to provide a reasonable hourly rate," it would use its discretion to set the experts' rates. (*Id.* (citing *Burgess v. Fisher*, 283

F.R.D. 372, 373 (S.D. Ohio 2012)).

The parties unfortunately could not reach a compromise. In a joint status report, they relayed that Plaintiffs' experts remain steadfast that the flat fees in their respective fee agreements must be paid by Defendants or, if the Court sets a lower rate, by Defendants with Plaintiff paying the difference. (DN 53). At the parties' request, the Court permitted simultaneous briefing on this dispute. (DN 54; DN 57; DN 59-1).

## II. Analysis

### A. Standard of Review

Rule 26(b)(4)(E) of the Federal Rules of Civil Procedure governs payment of expert witnesses as part of discovery. This Rule provides that "[u]nless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D)." Fed. R. Civ. P. 26(b)(4)(E). Such discovery includes the deposition of any person identified as an expert witness whose opinions may be presented at trial. *Id.* (b)(4)(A). The language of the Rule is mandatory, only subject to two caveats: (1) "manifest injustice" must not result from enforcement of the rule; and (2) the fees sought must be "reasonable."

### B. Reasonableness of the Experts' Fees

The burden of proving reasonableness falls on the party whose expert fee is in question. *See Brunarksi v. Miami Univ.*, No. 1:16-cv-311, 2017 WL 713691, at *2 (S.D. Ohio Feb. 23, 2017). When assessing the reasonableness of an expert's fee, district courts within the Sixth Circuit have considered: "the expert's education, training and experience; the prevailing rate for comparable experts; and the nature and complexity of the information sought." *Gough*, 2016 WL 11654862, at *2 (quoting *Burgess v. Fischer*, 283 F.R.D. 372, 373 (S.D. Ohio 2012) (add'l citations omitted)).

Courts consistently hold that flat fees for expert depositions are unreasonable, *Gough*, 2016 WL 11654862, at *2 (citing *Massasoit v. Carter*, 227 F.R.D. 264, 267 (M.D.N.C. 2005)), because they expect a "reasonable relationship between the services rendered and the renumeration to which an expert is entitled[,]" *Mannarino v. United States*, 218 F.R.D. 372, 375 (E.D.N.Y. 2003) (add'l citations omitted). "[I]t is simply not reasonable to require parties in every case to pay the same amount [for expert fees] regardless of the actual 'serves rendered' or 'time spent complying with the requested discovery.'" *Nnodimele v. City of New York*, No. 13-CV-3461 (ARR), 2015 WL 4461008, at * 2 (E.D.N.Y. July 21, 2015) (quoting *Mannarino*, 218 F.R.D. at 375). For these reasons, advanced payment to experts by the party seeking the deposition are disfavored. *See, Gough*, 2016 WL 11654862, at *2 (finding that expert is not entitled to advance payment for his deposition because "there is no way to know exactly how long his deposition will last").

This Court previously found that Plaintiff's experts' flat rates of $4,000 for a half-day deposition and $1,200 dollars for deposition preparation were unreasonable and that Plaintiff had not shown that a departure from this general policy was warranted in this case. (DN 52). The Court noted that Plaintiff had not demonstrated his case was overly complex, that the experts' schedules justified a flat fee deposition rate, or that $4,000 for a half-day deposition is a realistic rate for experts in this District. (DN 52, at pp. 1-2). After reviewing Plaintiff's brief, the Court finds Plaintiff again has failed to carry his burden of demonstrating the reasonableness of his experts' flat fees.

Plaintiff spends much of his brief outlining the education and experience of his selected experts. Dr. Wetzler earned his M.D. in 1986 and is Board certified in Orthopedic Surgery. (DN 59-4 at pp. 29-30). He practices with Advocare South Jersey Orthopedic Associates in New Jersey and works as a clinical assistant professor at the Philadelphia College of Osteopathic Medicine.

4

(*Id.* at p. 29). Dr. Lawrence obtained her M.D. in 1978 and J.D. in 2016 and is Board certified in Internal Medicine and Medical Oncology. (*Id.*, at pp. 18-19, 21). She currently serves as CEO of Lawrence Medical Legal Services, which provides "[m]edico-legal consultation and locum tenens patient care services . . . and second opinion consultations for medical oncology" and has also worked as a prisoner healthcare consultant since October of 2004. (*Id.* at p. 17). Both experts have ample experience in their respective specialties. Dr. Wetzler's specialty relates directly to Plaintiff's finger injury. And while Dr. Lawrence's practice and certification in Internal Medicine and Medical Oncology is not relevant here, it seems she has substantial experience with prison healthcare. The Court does not question the qualifications, training, and experience of either expert, but this alone does not render their excessive fees reasonable.

Plaintiff claims that the prevailing rates for comparable experts are $930 per hour. (DN 59-1, at p. 10). He relies on the "Expert Institute" website, which allegedly compiles national averages for expert specialties within the medical field. (DN 59-5). This website identifies $930 as the average deposition fee for "orthopedic surgery." (*Id.*). There are several issues with this data. First, this website is silent as to whether the $930 figure is an average hourly rate or a flat rate for deposition testimony. Second, Dr. Lawrence does not specialize in orthopedic surgery, so this rate is inapplicable to her regardless of whether it is reasonable. Most importantly, Plaintiff offers no support for this data. He doesn't produce evidence of specific, comparable experts charging similar fees in or around this District and doesn't demonstrate that other courts have approved the Expert Institute rates for his experts. Without any corroborating information, the Court cannot credit the Expert Institute's bald assertion that $930 is the national average for expert testimony from orthopedic surgeons.

Nor is the Court persuaded by Plaintiff's allegations that the nature and complexity of his experts' testimony warrants their high rates. Plaintiff claims that Dr. Lawrence's area of expertise – medical care for inmates – is "complex" and that her opinions on the Defendants' deliberate indifference to his medical needs and the Defendants' medical negligence are thorough and detailed. (*Id.* at pp. 9-10). As for Dr. Wetzler, Plaintiff similarly argues his area of expertise, the musculoskeletal system, and his opinions regarding the treatment provided for Plaintiff's injuries are complex. (*Id.* at p. 11). The record of this case, however, does not fully support this alleged complexity. It seems Plaintiff's injury was relatively uncomplicated. He dislocated his finger playing basketball, received an outside surgical consult six weeks after the injury, and ultimately had corrective surgery. Tellingly, Plaintiff only has seventy-six pages of medical records to submit to his experts for review. Further thwarting Plaintiff's allegations of complexity is the fact that Dr. Wetzler's expert report is only a page-and-a-half long. Plaintiff's vague allegations regarding the nature and complexity of his experts' testimony are simply not supported.

Plaintiff's experts stand firm on their flat fees and would not, even at the Court's nudging, identify a reasonable hourly rate for their services. Because the experts' proposed flat rates bear no relationship to the actual services to be rendered, and Plaintiff has not otherwise carried his burden, the Court reiterates its earlier conclusion that the experts' proposed flat fees are unreasonable. (*See* DN 52; *see also Gough,* 2016 WL 11654862, at *2 (finding advance payment for deposition is inappropriate when the parties don't know exactly how long a deposition will last)). The Court will use its discretion to fashion a reasonable hourly rate. *See Borel v. Chevron U.S.A., Inc.,* 265 F.R.D. 275, 276 (E.D. La. 2010).

Defendants propose rates of $400/hour and $350/hour for Drs. Wetzler and Lawrence, respectively. (DN 57, at pp. 5-6). Looking first to Dr. Wetzler's rate, other districts have found

hourly rates ranging between $400/hour and $750/hour to be reasonable for orthopedic surgeons' expert depositions. *See, e.g., Korabik v. Arcelormittal Plate LLC*, 310 F.R.D. 205, 208 (E.D.N.Y. Sept. 29, 2015) (rejecting $2,500 flat rate for reasonable rate of $475/hour); *Bryant v. Carlisle Carrier Corp.*, CV 2013-0578 (JG)(MDG), 2014 WL 12834477, at *2 (E.D.N.Y. Nov. 14, 2014) (reducing rate from $650/hour to $400/hour); *Anderson v. Jas Carriers, Inc.*, No. 1:12-cv-280, 2013 WL 991902, at *2 (S.D. Ohio Mar. 13, 2013) (finding $400/hour to be reasonable rate for orthopedic surgeon that treated plaintiff); *Maxwell v. Stryker Corp.*, No. 11-cv-0154-REB-KMT, 2012 WL 2319092, at *2 (D. Colo. June 19, 2012) (reducing fee from $2,000/hour to not more than $750/hour); *Cruz v. Home Depot, U.S.A., Inc.*, No. 8:11-cv-1264-T-27TBM, 2011 WL 4836239, at * 2 (M.D. Fla. Oct. 12, 2011) (reducing fee for treating orthopedist from $2,000/hour to $750/hour); *Coley v. Wal-Mart Stores East, LP*, No. 3:06-cv-619-J-20HTS, 2008 WL 879294, at *2 (M.D. Fla. March 28, 2008) (reducing rates from $1,000-1,500/hour to $500/hour). Considering these rates from other districts for orthopedic experts, the lack of more recent evidence as to rates for orthopedic surgeons, and Dr. Wetzler's extensive experience, the Court concludes that $500/hour is a reasonable rate for the actual time he spends testifying at the deposition.[2]

      Turning to Dr. Lawrence, Plaintiff's prison healthcare expert, the Court finds comparable rates for her peers are unknown. Although Dr. Lawrence's prior medical practice focused on internal medicine and medical oncology, none of her prior work related specifically to orthopedic surgery or hand injuries. Dr. Lawrence instead relies on her experience with prisoner healthcare in general to opine that Defendants were deliberately indifferent toward Plaintiff's medical needs and that their medical care was negligent. (DN 59-4, at pp. 11-16). This type of expert testimony is

---

[2] Although the Court's earlier Order directed the parties to compromise on a rate not to exceed $400/hour for expert deposition testimony, after reading the parties' briefs and conducting independent research, the Court finds a departure from its earlier $400/hour guideline is warranted.

often challenged in the Sixth Circuit as being improper legal conclusions on the ultimate issues in the case. *See Woods v. LeCureux*, 110 F.3d 1215, 1221 (6th Cir. 1997) (whether a prison official acted with deliberate indifference depends on that official's state of mind. It is a legal conclusion, an ultimate issue, and making such inferences is likely unhelpful to the trier of fact). The propriety of this testimony is not currently before the Court; however, it seems to be a plausible explanation for the lack of comparable expert rates. Despite this lack of information, the Court finds a rate of $400/hour is reasonable for the time Dr. Lawrence actually spends testifying in deposition based on her experience with prisoner healthcare described in her curriculum vitae.

## B. Preparation Time

Plaintiff's experts also set a flat fee of $1,200/hour for time spent preparing for the deposition. (DN 59-2). The invoice indicates this fee is for two hours minimum of preparation time. (*Id.*). Defendants argue they should not be taxed for time the experts spend preparing for the deposition because this is not time spent "responding to discovery" within the meaning of Rule 26. (DN 57, at p. 7). Even if the preparation costs are taxable, Defendants assert that the rate of $600/hour for preparation is excessive and there is no indication that the experts actually need two hours to prepare for this "relatively uncomplicated" testimony." (*Id.* at p. 8).

Contrary to Defendants' arguments, another judge within this District has found that "the general rule is that an expert may charge for time reasonably spent preparing for his deposition." *Gough*, 2016 WL 11654862, at *2 (citing *Burgess*, 283 F.R.D. at 373) (citing *Massasoit*, 227 F.R.D. at 267 and *Profile Prods., LLC v. Soil Mgmt. Techs, Inc.*, 155 F. Supp. 2d 880, 886 (N.D. Ill. 2001)). The key again is reasonableness. Because the Court determined above that $500/hour was reasonable for Dr. Wetzler and $400/hour was reasonable for Dr. Lawrence, the Court will apply these rates to the time the experts actually spend preparing for their depositions as well.

8

C. Fee Shifting and Manifest Injustice

Beyond the "reasonableness" hurdle, Courts applying Rule 26(b)(4)(E) must also ascertain that manifest injustice will not result from enforcing the Rule. Courts "aim to calibrate the fee so that [parties] will not be hampered in efforts to hire quality experts, while [their adversaries] will not be burdened by unfairly high fees preventing feasible discovery and resulting in windfall to the expert." *Wile v. James River Ins. Co.*, 17-CV-1275S(Sr), 2020 WL 5995183, at *1 (W.D.N.Y. Oct. 9, 2020) (quoting *Mannarino*, 218 F.R.D. at 374).

Plaintiff explains that his experts stand firm on their flat fees and that if the Court lowers the rates, Plaintiff will have to pay the difference. (DN 59-1, at p. 3). Plaintiff argues he is indigent and cannot afford to do so. (*Id.*). Defendants argue that whether or not the experts can enforce any contractual terms in their compensation agreements with Plaintiff is not properly before this Court. (DN 57, at p. 4).

While it is unfortunate that the disparity between the reasonable hourly rates and the experts' flat fees may fall on Plaintiff, he had the ability to contract with whatever expert he wanted. *Grady v. Jefferson Cnty. Bd. of Cnty. Comm'rs*, 249 F.R.D. 657, 662 (D. Colo. 2008) (noting that while parties are free to contract with any expert they choose, the court will not "automatically tax the opposing party with unreasonable fees charged by the expert."). He cannot choose experts with exorbitant rates and then rely on his indigence to push such rates onto the Defendants. Allowing this behavior would result in manifest injustice to Defendants.

As for Plaintiff's indigence, he claims he is "impoverished" and "has no assets nor any financial means for funding the prosecution of his cause of action." (DN 59-1, at p. 4). Despite these assertions, Plaintiff could apparently afford to pay the filing fee in this case and, more importantly, retain Dr. Lawrence and Dr. Wetzler and pay for the fees associated with preparing

their reports. An email produced by Defendants seems to reflect that Plaintiff paid around $1,200 for each expert's written report to Prime Medical Experts. (*See* DN 57-4). Plaintiff additionally has never applied to proceed *in forma pauperis* in the action and did not produce any evidence to support his indigence.

Based on these considerations, the Court applies Rule 26(b)(4)(E) to shift the reasonable hourly rates identified above for the actual time the experts spend preparing for and testifying at their depositions onto Defendants. Any dispute that remains between Plaintiff and his experts regarding advanced payment and the remaining requested fees is outside the scope of this litigation.[3]

## ORDER

**IT IS THEREFORE ORDERED** that Defendants' request that the Court reduce Plaintiff's experts' requested flat fees for deposition testimony and preparation is **GRANTED IN PART** as set forth in this memorandum opinion and order.

Regina S. Edwards, Magistrate Judge
United States District Court

November 18, 2020

Copies:     Counsel of Record

---

[3] It appears that a similar situation arose in *Gough*, when the expert "declined to modify his fee schedule." 2016 WL 11654861, at *1. The court, however, did not comment on whether the contracting party would be required to pay the difference between the expert's flat fee and the hourly rate deemed reasonable by the court.